United States District Court
Southern District of Texas
**ENTERED**
February 20, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **ELMER NIXON BONILLA CHICAS,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:26-CV-00131** |
| | § | |
| **WARDEN,** *et al.*, | § | |
| | § | |
| **Respondents.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Petitioner Elmer Nixon Bonilla Chicas's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, (Dkt. 1), challenging the lawfulness of his detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS).

For the reasons set forth below, Petitioner's Petition, (Dkt. 1), is **GRANTED**. Respondents' Response to the Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 9), is **DENIED**.

## Background

### A. DHS Policy for Detention of Applicants for Admission

On July 8, 2025, the Department of Homeland Security (DHS) announced a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," changing the interpretation of the applicable statutory authority for the detention of noncitizens classified as applications for admission. *See* ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, American Immigration Lawyers Association (July 8,

2025), https://perma.cc/2V6H-FHVD. The memo states that 8 U.S.C. § 1225(b)(2), rather than 8 U.S.C. § 1226(a), is the applicable immigration detention authority for all noncitizens who are classified as applicants for admission, regardless of their manner of entry into the country or their time present in the United States prior to apprehension. (*See id.*) Shortly thereafter, on September 5, 2025, the Board of Immigration Appeals (BIA) issued a published decision in line with this interim guidance, holding that Immigration Judges (IJs) lack authority to hear bond requests or to grant bond to noncitizens who are present in the United States without admission because they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

The change in administrative policy resulted in a growing number of cases across the country on the statutory interpretation of the Immigration and Nationality Act (INA). *See, e.g., Fuentes v. Lyons*, 5:25-cv-00153, Dkt. No. 15 (S.D. Tex. Oct. 16, 2025). On February 6, 2026, the United States Court of Appeals for the Fifth Circuit addressed the dispute over the statutory interpretation of 8 U.S.C. § 1225(b)(2)'s mandatory detention provision in *Buenrostro-Mendez v. Bondi*, — F.4th —, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026) ("*Buenrostro-Mendez*")*.* In the precedential decision, the Fifth Circuit determined that noncitizens apprehended in the interior who entered without inspection are "applications for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and therefore are not entitled to bond hearings under 8 U.S.C. § 1226(a). *Id.* at *4. The decision was limited to the statutory interpretation of the applicable provisions and left unresolved other claims brought by petitioners challenging their mandatory detention, including constitutional questions under the Due Process Clause. *Id.* at *9. Petitioner's case, like many others before the Court, arises out of his recent reapprehension and redetention by ICE pursuant to these changes.

2 / 26

**B. Petitioner's Background**

Petitioner Elmer Nixon Bonilla Chicas ("Petitioner" or "Mr. Bonilla Chicas") is a thirty-three-year-old citizen of El Salvador. (Dkt. 1 at 14, Attach. 2 at 2.)[1] Mr. Bonilla Chicas entered the United States around February of 2003 when he was ten years old and has resided in the country for more than 20 years. (*Id.*; Dkt. 9 at 2.) Around July of 2013, Mr. Bonilla Chicas was driving in North Dakota when he was stopped by a local sheriff and brought to an immigration office. (Dkt. 1, Attach. 2 at 2; Dkt. 9, Attach 2.) Mr. Bonilla Chicas was placed in immigration proceedings, served with a Notice to Appear, and subsequently released on his own recognizance due to not meeting DHS's priority criteria. (Dkt. 1, Attach. 2 at 2; Dkt. 9, Attach. 1.)

In 2018, Mr. Bonilla Chicas married Rhonda Lynn Bonilla Chicas ("Mrs. Bonilla Chicas") who is a United States citizen and member of the Chippewa Native American Tribe. (Dkt. 1 at 14, Attach. 2 at 2, 13.) For the past six or seven years, he has lived with his wife and eleven-year-old U.S. citizen stepson in the home they own in Susanville, California. (*Id.*, Attach. 2 at 2.) In March of 2020, Mrs. Bonilla Chicas filed a family immigration petition for Mr. Bonilla Chicas which was approved on January 21, 2026. (*Id.* at 14, Attach. 2 at 35.) Mr. Bonilla Chicas has a valid work permit and a valid driver's license. (*Id.*, Attach. 2 at 2; Dkt. 10, Attach. 1 at 44–46.) He owns a sole proprietorship that is based out of Texas and works as a truck driver. (Dkt. 1, Attach. 2 at 2.) Mr. Bonilla Chicas has never been arrested for any criminal offense during his residency in the United States. (*Id.* at 14; Dkt. 10 at 5.)

On January 16, 2026, Mr. Bonilla Chicas was apprehended by ICE agents at a highway checkpoint in Texas when he was delivering a load of electrical wire in the course of his

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

employment. (Dkt. 1 at 2; Dkt. 9 at 2.) Petitioner has remained detained at the Rio Grande Processing Center in Laredo, Texas since his reapprehension. (Dkt. 1 at 2, Attach. 1.) Since his detention, Mr. Bonilla Chicas claims that he has not gotten much sleep and is "extremely depressed," stating "I miss my wife terribly and my son." (*Id.*, Attach. 2 at 4.) He is also concerned for the trucking business he has "spent more than a decade building" as he feels "that each day that passes that business is slipping way." (*Id.*) Since her husband's detention, Mrs. Bonilla Chicas has also been struggling with her studies to obtain a master's degree, medical issues, and emotional distress, stating "I miss him so much that I am on the edge of tears all day long." (*Id.* at 14, Attach. 2 at 32.) Mrs. Bonilla Chicas also states that her "son wants to know when Papa is going to be home, and [she is] unable to provide him with the stable answers he deserves." (*Id.*)

### C. Procedural Background

On January 30, 2026, Mr. Bonilla Chicas filed a Petition for Writ of Habeas Corpus challenging his detention under 8 U.S.C. § 1225(b)(2) as unlawful and requesting that the Court order his immediate release. (*See* Dkt. 1.) In his Petition, Mr. Bonilla Chicas alleges that Respondents unlawfully detained him pursuant to mandatory detention under 8 U.S.C. § 1225(b)(2) in violation of the INA, agency regulations, and the Due Process Clause of the Fifth Amendment. (*Id.* at 15–18.) The Court ordered Respondents to file a response to Mr. Bonilla Chicas's Petition by February 9, 2026. (Dkt. 4.) Respondents filed a timely response and motion for summary judgment, citing the Fifth Circuit's intervening decision in *Buenrostro-Mendez*. (*See* Dkt. 9.) On February 13, 2026, Petitioner filed a Reply to the Government's Response, agreeing with Respondents that at least a portion of his Petition is now controlled by the precedential decision in *Buenrostro-Mendez.* (Dkt. 10 at 1.) However, Petitioner claims that *Buenrostro-Mendez* has no impact on Mr. Bonilla-Chicas's due process claim, which "remains strong due to

his decades-long ties to the United States and complete lack of any criminal history." (*Id.* at 3–6.) Thus, the Court addresses Petitioner's remaining claims after *Buenrostro-Mendez*.

## Legal Standards

### A.  28 U.S.C. § 2241

A district court has jurisdiction to grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). The writ of habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). Accordingly, a district court's habeas jurisdiction includes challenges to the lawfulness of immigration-related detention. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); s*ee also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citations omitted).

### B.  Rule 56(a)

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rogers v. Bromac Title Servs.*, L.L.C., 755 F.3d 347, 350 (5th Cir. 2014). If the moving party meets its burden of

demonstrating the absence of a genuine factual dispute, the non-movant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party," and a "fact issue is 'material' if its resolution could affect the outcome of the action." *Canady v. Davis*, 687 F. App'x 362, 365 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)). "Because this case arises in a summary judgment posture, we view the facts in the light most favorable to [Petitioner], the nonmoving party." *Id.* (quoting *City & Cnty. of San Francisco, Calif. v. Sheehan,* 575 U.S. 600, 603).

## Discussion

Mr. Bonilla Chicas argues that Respondents have unlawfully detained him pursuant to mandatory detention under 8 U.S.C. § 1225(b)(2) in violation of the INA, agency regulations, and the Due Process Clause of the Fifth Amendment. The Court first addresses its jurisdiction to hear Petitioner's challenge to his current detention by DHS before evaluating the status of Petitioner's statutory claims under the INA after the Fifth Circuit opinion in *Buenrostro-Mendez* and Petitioner's due process claim under the Fifth Amendment.

### A. Jurisdiction

Federal courts are duty-bound to examine their own subject-matter jurisdiction and may not proceed where it is apparent that jurisdiction does not exist. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004). "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007); s*ee also Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The primary federal habeas corpus statute confers federal subject-matter jurisdiction over habeas petitions filed

by noncitizens who claim they are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas*, 533 U.S. at 687. However, the REAL ID Act of 2005 divested federal courts of jurisdiction over various important categories of immigration cases. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005); 8 U.S.C. § 1252. As pertains to Petitioner's claims, district courts may not review claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). Additionally, district courts may not review questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States." *See* 8 U.S.C. § 1252(b)(9); *see also Texas v. United States*, 126 F.4th 392, 417 (5th Cir. 2025).

The Cout concludes that neither 8 U.S.C. § 1252(g) or § 1252(b)(9) bar review of Mr. Bonilla Chicas's unlawful detention claim. The Fifth Circuit "has long recognized that [§ 1252(g)] is designed to protect the discretionary decisions of immigration authorities in matters related to removal and deportation." *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (citing *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999)). The Supreme Court has cautioned against reading § 1252(g) broadly, instead reaffirming that "[w]e did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999)). Moreover, the Fifth Circuit has held "[s]ection 1252(g) does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g).'" *Cardoso v. Reno*, 216 F.3d 512, 516–17

(5th Cir. 2000) (citation omitted). Thus, 8 U.S.C. § 1252(g) cannot bar review of Petitioner's detention claim.

Likewise, the Supreme Court has similarly indicated that where a Petitioner is not "asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined," § 1252(b)(9) is not a jurisdictional bar. *Nielsen v. Preap*, 586 U.S. 392, 402 (2019); *see also Duarte*, 27 F.4th at 1056–57; *see also Texas v. United States*, 809 F.3d 134, 163 (5th Cir. 2015). Here, Petitioner does not challenge the decision to detain him in the first place, but rather whether mandatory detention without any individualized determination under 8 U.S.C. § 1252(b)(2) has been unconstitutionally applied to him as a noncitizen who has been living in the United States. *See Vieira v. De Anda-Ybarra*, 2025 WL 2937880, at *4 (W.D. Tex. Oct. 16, 2025) ("Petitioner is not asking for a review of an order of removal, challenging the decision to detain him in the first place or to seek removal, and not even challenging any part of the process by which his removability will be addressed. Instead, Petitioner is challenging whether certain INA provisions require his detention without a bond hearing, and whether they are being unconstitutionally applied to him." (internal citations omitted)); *Duarte*, 27 F.4th at 1056 ("where review of any agency determination involves neither a determination as to the validity of [a noncitizen's] deportation orders or the review of any question of law or fact arising from their deportation proceedings, . . . (b)(9) should not operate as a bar to the district court's review."). Thus, the Court applies the same reasoning here in finding that 8 U.S.C. § 1252(b)(9) does strip the Court of jurisdiction to hear Mr. Bonilla Chicas's claim that his redetention by DHS violated his procedural due process rights under the Fifth Amendment.

Therefore, nothing in 8 U.S.C. § 1252 strips the Court of its power to review Mr. Bonilla Chicas's constitutional claims that he was entitled to adequate notice, an individualized determination of whether he presents a danger or a flight risk, and an opportunity to respond before he was detained by DHS and subject to mandatory detention.

**B.  *Buenrostro-Mendez* Does Not Foreclose Petitioner's Due Process Claim**

Respondents argue that Petitioner's statutory claims based on the INA are foreclosed by the Fifth Circuit's opinion in *Buenrostro-Mendez.* (*See* Dkt. 9 at 2–3) (citing *Buenrostro-Mendez*) (holding that all applicant's for admission are detained under 8 U.S.C. § 1225(b)). In reply, Petitioner agrees that "at least a portion" of his petition is controlled by the decision in *Buenrostro-Mendez.* (Dkt. 10 at 2.) However, Petitioner argues that his "Due Process claim survives the *Buenrostro* decision" because *Buenrostro-Mendez* "does not decide or dispose of the Due Process claim." (*Id.* at 3.) Petitioner points out that the *Buenrostro-Mendez* contains no mention of due process other than a passing reference to the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 701 (2001), which applies to petitioners unlike Mr. Bonilla Chicas who already have a final order of removal. (*Id.* at 3–4.); *see also Buenrostro-Mendez*, 2026 WL 323330, at *9.

As Petitioner accurately claims, *Buenrostro-Mendez* did not address the Due Process Clause of the Fifth Amendment. Although the *Buenrostro-Mendez* petitioners challenged their detention on both statutory and constitutional grounds, the district courts initially declined to reach a conclusion on their due process claims. *See Buenrostro-Mendez v. Bondi*, 2025 WL 2886346, at *3 n.4 (S.D. Tex. Oct. 7, 2025); *Covarrubias v. Vergara*, 2025 WL 2950097, at *5 n.3 (S.D. Tex. Oct. 8, 2025). During oral argument on appeal to the Fifth Circuit, the counsel for the Government explicitly stated that there was "one issue before the Court now: the statutory question . . . . There's not, in other words, a due process claim here." *Marceau v. Noem et al.*, 2026 WL 368953, at *2

(W.D. Tex. Feb. 9, 2026) (citing Oral Argument, *Buenrostro-Mendez* ¸ No. 25-20496, at 44:56–45:11 (5th Cir. Feb. 3, 2026), *available at* https://perma.cc/RHD9-FGML). The Fifth Circuit confined its analysis and holding to the statutory interpretation of 8 U.S.C. § 1225(b)(2) and remanded the case to the district court "for further proceedings consistent with this opinion." *Buenrostro-Mendez*, 2026 WL 323330, at *10.

Thus, *Buenrostro-Mendez* left open the question of whether detention of petitioners like Mr. Bonilla Chicas without an individualized determination of the need for detention violates the Due Process Clause. Other district courts bound by Fifth Circuit precedent have found that *Buenrostro-Mendez* does not foreclose petitioners challenging their detention on due process grounds. *See, e.g.*, *Marceau*, 2026 WL 368953, at *2 ("The Court's conclusion is not changed by the Fifth Circuit's recent decision in [*Buenrostro-Mendez*].");  *Hassen v. Noem*, 3:26-cv-00048-DB, Dkt. No. 8 at *4 n.1 (W.D. Tex. Feb. 9, 2026) ("*Buenrostro-Mendez* does not change this case's outcome on procedural due process grounds."). While Petitioner's claim under the INA is controlled by *Buenrostro-Mendez*'s interpretation of the 8 U.S.C. § 1225(b)(2), his due process claim remains before the Court.

### C. Procedural Due Process

The Court now turns to Petitioner's challenge to his detention on due process grounds. Mr. Bonilla Chicas alleges that his detention by DHS without notice of the intent to revoke his prior release, an individualized assessment of his flight risk and dangerousness, and an opportunity to respond at a hearing before being detained violates his rights under the Due Process Clause of the Fifth Amendment. (Dkt. 1 at 17–19; Dkt. 10 at 7–8, 10) (citing *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)).

### 1. *Petitioner May Bring an As-Applied Due Process Challenge*

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. It requires "at a minimum . . . that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). That noncitizens are entitled "to due process of law in the context of removal proceedings" is "well established." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (citation modified).

Respondents argue that the reapprehension and detention of Mr. Bonilla Chicas for mandatory detention under 8 U.S.C. § 1252(b)(2) does not violate his due process rights because he is entitled to no more due process than what the INA provides him under the statute. (*See* Dkt. 9.) They assert that Mr. Bonilla Chicas is "merely asserting a disagreement with the Government's application of § 1225(b)(2)" and has thus failed to establish a valid due process claim. (*See Id.* at 3) (citing *Cabanas v. Bondi*, 2025 WL 3171331, at *7 (S.D. Tex. Nov. 13, 2025)). But rather than a mere disagreement with the application of 8 U.S.C. § 1252(b)(2), Petitioner asserts that § 1252(b)(2) is unconstitutional as applied to him because he has acquired a protected liberty interest in his freedom from detention by virtue of his twenty-year presence in the country and the significant ties that he has established. (*See* Dkt. 10 at 6) ("Petitioner has spent more than 20 years building a life with his U.S. citizen wife and child in the United States.").

In an as-applied constitutional challenge, the Court assesses whether a law with some permissible uses "is nonetheless unconstitutional as applied to [the Respondents'] activity." *United*

*States v. Morgan*, 147 F.4th 522, 526 (5th Cir. 2025), *reh'g en banc denied*, (5th Cir. Oct. 20, 2025) (quoting *Spence v. Washington*, 418 U.S. 405, 414 (1974)). While in assessing a facial challenge, the Court asks whether a law "could never be applied in a valid manner." *Members of City Council of City of L.A.Taxpayers for Vincent*, 466 U.S. 789, 797–98 (1984); *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (citations omitted) ("A [petitioner] can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.,* that the law is unconstitutional in all of its applications" (citations omitted)); *Morgan*, 147 F.4th at 526.

As-applied due process challenges remain an available avenue to challenge mandatory detention provisions of the INA. In *Jennings v. Rodriguez*, the Supreme Court considered whether the constitutional avoidance canon required the government to grant periodic bond hearings to noncitizens facing prolonged detention under 8 U.S.C. §§ 1225 and 1226 and held that it did not require periodic bond hearings as a matter of statutory construction. 583 U.S. at 291. But in deciding the statutory construction argument, the Supreme Court expressly left unanswered whether the petitioners' detention without a bond hearing raised constitutional due process issues and instead remanded the issue for further consideration in the lower courts. *Id.* at 312 ("Consistent with our role as 'a court of review, not of first view'" "we do not reach" "respondents' constitutional arguments on their merits." (citation omitted)).

One year later, in *Nielsen v. Preap*, the Supreme Court rejected a statutory challenge to the mandatory detention under 8 U.S.C. § 1226(c) for noncitizens with criminal convictions who were not detained by immigration authorities immediately after their release from criminal custody. 586 U.S. at 418–20. The Court took care to clarify that "[o]ur decision today on the meaning of that statutory provision does not foreclose as-applied challenges—that is, constitutional challenges to

applications of the statute as we have now read it." *Id.* Then, in *Johnson v. Arteaga-Martinez*, the Government conceded before the Supreme Court "that as-applied constitutional challenges remain available to address 'exceptional' cases" in the context of immigration detention. 596 U.S. 573, 583 (2022). Thus, this Court may consider Mr. Bonilla Chicas's as-applied due process challenge even if he is properly subject to mandatory detention under 8 U.S.C. § 1252(b)(2) per *Buenrostro-Mendez* as a matter of statutory construction. *See Buenrostro-Mendez*, 2026 WL 323330, at *1 (noting that the court only addressed "the statutory interpretation issue posed by these alien petitioners")*; see also Hassen v. Noem*, No. 3:26-cv-48-DB, Dkt. No. 8 at *4 n.1 (W.D. Tex. Feb. 9, 2026) ("*Buenrostro-Mendez* does not change this case's outcome on procedural due process grounds."); *Hernandez-Fernandez v. Lyons*, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025) ("the Court need not consider whether the agency's new mandatory detention policies reflect a proper reading of the INA. The issue, instead, is whether those policies have been applied to [Petitioner] in an unconstitutional manner.")

Having established that Mr. Bonilla Chicas may bring his as-applied due process challenge, the primary question before the Court is the scope of Mr. Bonilla Chicas's due process rights as a noncitizen detained under 8 U.S.C. § 1252(b)(2) for the purpose of removal proceedings. As various district courts have recognized, "a person may obtain a liberty interest through their presence in the country, particularly where that presence is with the express permission of the Government." *Marceau*, 2026 WL 368953, at *1 (citing *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 685–86 (W.D. Tex. 2025)); *see also Chinchilla v. De Anda-Ybarra*, 2025 WL 3645178, at *5 (W.D. Tex. Dec. 16, 2025) (finding that a petitioner who had lived in the "United States for over four years and attends his local church" possessed "a strong liberty interest in his freedom from detention because he has established a life here"); *Hernandez-Fernandez*, 2025 WL 2976923 at *9

("Because he spent nearly three years at liberty in the United States, [petitioner] possesses a cognizable interest in his freedom from detention."). Moreover, the interest in being free from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

Mr. Bonilla Chicas has lived in the United States for over twenty years, with at least ten of those years occurring with the express permission of DHS while he was subject to supervised release pending the resolution of his removal proceedings. (*See* Dkt. 1 at 2.) Thus, Mr. Bonilla Chicas has a cognizable liberty interest in his freedom from detention that is protected by the Fifth Amendment Due Process Clause, and any redetention by DHS under 8 U.S.C. § 1252(b)(2) must not violate his due process rights.

### 2. Demore *and* Thuraissigiam *Do Not Decide Petitioner's Claim*

Given that Mr. Bonilla Chicas has a cognizable liberty interest in his freedom from detention that is protected by due process, the Court now considers whether the redetention of Mr. Bonilla Chicas under 8 U.S.C. § 1252(b)(2)'s mandatory detention scheme without any type of notice, individualized assessment, or opportunity to be heard is permissible under applicable Supreme Court precedent. It is well established that due process typically "requires some kind of a hearing before the State deprives a person of liberty or property. *Zinermon*, 494 U.S. at 127 (citing *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542 (1985) ("'[T]he root requirement' of the Due Process Clause" is " 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest'"; hearing required before termination of employment (emphasis in original))); *see also Santosky v. Kramer*, 455 U.S. 745,

769–70 (1982) (requiring full evidentiary hearing prior to the termination of parental rights); *Vitek v. Jones*, 445 U.S. 480, 496–97 (1980) (requiring adversary hearing prior to transferring inmate to a mental hospital); *Addington v. Texas*, 441 U.S. 418, 432–33 (1979) (requiring full evidentiary hearing governed by a standard higher than "preponderance of the evidence" prior to civil commitment); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 18 (1978) (requiring a hearing before cutting off utility service); *Goss v. Lopez*, 419 U.S. 565, 579 (1975) (requiring informal hearing before suspension of students from public school, "*some* kind of notice and . . . *some* kind of hearing" (emphasis in original)).

Respondents argue that Petitioner is not entitled to such a process by virtue of his status as a noncitizen in removal proceedings and cite to the Supreme Court's opinion in *Demore v. Kim* to lend support for their argument that Petitioner's due process rights are limited to those rights provided in the statute. (*See* Dkt. 9 at 3.) First, *Demore* addressed a different statutory provision of the INA—8 U.S.C. § 1226(c) rather than 8 U.S.C. § 1225(b)(2). Second, the reasoning in *Demore* is inapplicable to Petitioner's case because *Demore* evaluated the facial constitutionality of mandatory detention under § 1226(c) rather than an as-applied challenge. *See* 538 U.S. at 531.

Civil immigration detention is permissible to the extent it serves the statutory purposes of ensuring appearance at proceedings and protecting the community from danger. *See Zadvydas*, 533 U.S. at 690. In *Demore*, the Court explained that in general, "[d]etention during removal proceedings is a constitutionally permissible part of [the removal] process." 538 U.S. at 531. But the Court also reaffirmed that noncitizens are entitled to due process in the immigration detention context while recognizing certain limitations. *See id.* at 521–24 (citing *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976) ("In the exercise of its broad power over naturalization and immigration,

Congress regularly makes rules that would be unacceptable if applied to citizens."); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896); *Carlson v. Landon*, 342 U.S. 524, 538 (1952).

Crucially, this language in *Demore* arose in the context of a facial challenge to the constitutionality of mandatory detention for noncitizens subject to 8 U.S.C. § 1226(c), rather than an as-applied challenge rooted in the particular liberty interest of an individual noncitizen. *See Demore*, 538 U.S. at 514 ("Respondent . . . filed a habeas corpus action . . . challenging the constitutionality of § 1226(c) itself."). Thus, even acknowledging that detention during removal proceedings is constitutional as a general matter does not answer the question of whether it is unconstitutional to apply 8 U.S.C. § 1225(b)(2)'s mandatory detention provision to Petitioner given his specific factual circumstances. Here, the Court has found that Mr. Bonilla Chicas obtained a liberty interest through his presence in the United States that has stretched for more than twenty years since he first entered the country in 2003. Furthermore, he was already apprehended by ICE in 2013 and subsequently released from custody on his own recognizance pending a resolution of his removal proceedings. Thus, DHS knew that Mr. Bonilla's Chicas was eligible for detention and removal and made the decision to release him after evaluating his risk of flight and whether he was a danger. In the nearly thirteen years after this determination was made, Mr. Bonilla Chicas built his life by marrying a U.S. citizen, becoming a stepfather, obtaining employment, and purchasing a house. His liberty interest in his freedom from detention was undermined when he was redetained under 8 U.S.C. § 1225(b)(2) without notice, any individualized determination, or an opportunity to challenge his detention. Thus, Petitioner's as-applied challenge to 8 U.S.C. § 1225(b)(2) is not precluded by the Supreme Court's opinion in *Demore* upholding mandatory detention under 8 U.S.C. § 1226(c) as facially constitutional.

16 / 26

Additionally, it is also worth noting that *Demore* evaluated the facial constitutionality of 8 U.S.C. § 1226(c)'s mandatory detention provision in the specific context of noncitizens with certain criminal convictions. In doing so, the Supreme Court emphasized the narrowness of § 1226(c) as a provision that prescribes mandatory detention for only a subset of deportable noncitizens who have been convicted of specific crimes. *Id*. at 513 ("§ 1226(c), provides that '[t]he Attorney General shall take into custody any alien who' is removable from this country because he has been convicted of one of a specified set of crimes."). Furthermore, the Supreme Court heavily weighed the fact that Congress had considered specific evidence of the unique danger and flight risk that noncitizens with certain criminal convictions present when carving out the mandatory detention language of 8 U.S.C. § 1226(c). *Id.* at 528 ("[I]n adopting § 1226(c), Congress had before it evidence suggesting that permitting discretionary release of aliens pending their removal hearings would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully."). The Supreme Court spent considerable effort evaluating the quality and quantity of the evidence that Congress had considered. *Id.* at 518–20 (collecting detailed statistics on the danger and flight risk posed by noncitizens with certain criminal convictions that Congress considered in its legislative decision-making process in enacting § 1226(c)). Additionally, the Supreme Court likewise relied on the assertion that removal proceedings for noncitizens detained under 8 U.S.C. § 1226(c) were generally brief by virtue of their criminal convictions in finding that their detention without a hearing did not offend due process. *See Demore*, 538 U.S. at 529–30 (emphasizing "the many cases in which removal proceedings are completed while the alien is still serving time for the underlying conviction" and

that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked.")[2]

Thus, *Demore* upheld mandatory detention under 8 U.S.C. § 1226(c) as facially constitutional in a particularly narrow context. While in this case, under 8 U.S.C. § 1225(b)(2), Mr. Bonilla Chicas is subject to mandatory detention based solely on his inclusion in the broad group of noncitizen's considered to be applicants for admission, notwithstanding the length of time he has lived in the United States, the ties he has established, or a prior decision to release him on his own recognizance based on a determination that he does not constitute a danger or a flight risk. Therefore, Mr. Bonilla Chicas's as-applied due process challenge is not precluded by the Supreme Court's decision in *Demore*.

Additionally, despite Respondents' failure to raise the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam* as relevant to the Court's analysis of Mr. Bonilla Chicas's due process rights, the Court also briefly considers its implications. In *Thuraissigiam*, the Supreme Court rejected an as-applied due process claim for a noncitizen subject to expedited removal under 8 U.S.C. § 1225(b)(1) who challenged his removal order, explaining that people detained at or near the border as "applicants for admission" are afforded "only those rights regarding admission that Congress has provided by statute." 591 U.S. at 106,

---

[2] In recognizing the weight that the Supreme Court afforded such evidence in answering the constitutional question, the Court also recognizes that: "In 2016, 13 years after the *Demore* decision, the Justice Department acknowledged in a letter to the Supreme Court that it made notable errors in its *Demore* filings that significantly underrepresented the amount of time that certain migrants with criminal records spend in mandatory detention." Jacob E. Maguire, *Extended Detention Without Due Process: Resolving A Circuit Split in Favor of Detained Noncitizen Migrants' Due Process Rights,* 130 Dick. L. Rev. 317, 326 (2025); *see also* Timothy Zurcher, *Modern Challenges to Mandatory Immigration Detention: Building Constitutional Walls Around Statutory Expansions*, 98 St. John's L. Rev. 1389, 1398–99 (2025).

114, 140. However, the Court agrees with other district courts that have considered the effect of *Thuraissigiam* and concludes that it does not preclude Mr. Bonilla Chicas's due process claim because Petitioner was detained after living in the United States for years rather than at the border on the "threshold of initial entry." *See id*. at 140; *see also Lopez-Arevelo*, 801 F. Supp. 3d at 682–84; *Hernandez-Fernandez*, 2025 WL 2976923, at *8; *Vieira*, 2025 WL 2937880, at *4.

In *Thuraissigiam,* the Supreme Court differentiated between noncitizens who had established connections and a substantial presence in the United States and those who had not. 591 U.S. at 107. The Court held that that "[w]hile aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id*. It further emphasized that the respondent-noncitizen was "[l]ike an alien detained after arriving at a port of entry" because the noncitizen had been apprehended "on the threshold" merely 25 yards after crossing the U.S.-Mexico border and had been continuously detained by ICE since he was encountered. *Id.* at 139–40 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

There are two critical distinctions in Mr. Bonilla Chicas's claims from the claims brought by the noncitizen in *Thuraissigiam.* First, *Thuraissigiam* addressed due process questions in the context of a noncitizen's rights to challenge the procedures for conducting removal proceedings rather than detention procedures. Unlike the Petitioner in *Thuraissigiam*, Mr. Bonilla Chicas does not challenge the removal process or his due process rights under such a process, rather he challenges his current detention alone, which is not precluded. *See Lopez-Arevelo,* 801 F. Supp. 3d at 682–83 (describing the deportability versus detention distinction in *Thuraissigiam*); *see also*

*Espinoza v. Kaiser*, 2025 WL 2581185, at *7 n.9 (E.D. Cal. Sept. 5, 2025); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023) ("*Thuraissigiam's* discussion of due process is necessarily constrained to challenges to admissibility to the United States.")

Second, the noncitizen in *Thuraissigiam* was apprehended 25 yards into U.S. territory on the threshold of initial entry and continuously detained by ICE, meanwhile Petitioner has established over twenty years of presence in the United States with at least ten of those years occurring after his release by ICE upon initial apprehension. (*See* Dkt. 1 at 14); *see also Thuraissigiam*, 591 U.S. at 114. In that time, Petitioner married his wife Rhonda Lynn Bonilla Chicas, a United States citizen and member of the Chippewa Native American Tribe. (*See* Dkt. 1 at 14.) The couple has lived together for the past six or seven years, caring for Mr. Bonilla Chicas's eleven-year-old U.S. citizen stepson in California. (*Id.*, Attach. 2 at 2.) Mr. Bonilla Chicas has also been employed as a truck driver. (*Id.*) Despite compliance with ICE's requirements for his release pending removal proceedings, Mr. Bonilla Chicas was reapprehended on January 16, 2026, by ICE agents at a highway checkpoint in Texas while working. (Dkt. 1 at 2; Dkt. 9 at 2.) Therefore, Mr. Bonilla Chicas was far beyond the "threshold" of entry into the United States and had established a significant presence in and connection to this country.

Given these distinctions, the Court agrees with *Lopez-Arevelo* that "'[the] distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.' And the distinction is one of place—not status: '[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.'" 801 F. Supp. 3d at 684 (internal citations omitted). "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the

United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (collecting cases). Thus, *Thurassigiam* also cannot preclude Mr. Bonillas Chicas's claims. Therefore, the Court finds that Petitioner is entitled under the Fifth Amendment to due process protections beyond merely what is afforded to him under 8 U.S.C. § 1225(b)(2) because of the liberty interest he has obtained through his presence in the United States.

### 3. *Due Process Requires Notice, Individualized Assessment, and an Opportunity to be Heard*

Upon finding that Mr. Bonilla Chicas is entitled to due process protections that extend beyond what is provided in 8 U.S.C. § 1225(b)(2), the Court turns to evaluating what procedural due process specifically requires in Petitioner's case. As the Court has already determined, Petitioner has acquired a protected liberty interest because he "has spent more than 20 years building a life with his U.S. citizen wife and child in the United States." (Dkt. 10 at 6.) He argues that, by virtue of this interest, the Fifth Amendment requires notice and some kind of hearing before he is deprived of his liberty interest in his freedom. (*Id.* at 8) (citing *Zinermon*, 494 U.S. at 127).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Vieira*, 2025 WL 2937880, at *6 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Under the Supreme Court's balancing test established in *Mathews v. Eldridge*, determining the specific dictates of due process generally requires evaluation of "(1) the private interest that will be affected by the official action, (2) a cost-benefit analysis of the risks of an erroneous deprivation versus the probable value of additional safeguards, and (3) the Government's interest, including the function involved and any fiscal and administrative burdens associated with using different procedural safeguards." *Dusenbery v. United States*, 534

U.S. 161, 167 (2002) (citing *Mathews*, 424 U.S. at 335).

On the first *Mathews* factor, Petitioner's private interest in his release from detention cannot be overstated. "[T]he interest in being free from imprisonment" is "the most significant liberty interest there is." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004)); *see also Youngberg v. Romeo*, 457 U.S. 307, 316 (1982) ("[L]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action.") As previously discussed, Petitioner has a strong private interest in his release from detention because he has lived in the United States for many years with his family, owns a business, and has never been convicted of a criminal offense. Mr. Bonilla Chicas's detention has impaired his ability to run his trucking company and caused his family to suffer because his wife and child depend on him for emotional, medical, and financial support. (Dkt. 10 at 6–7.) Moreover, his detention has impaired his ability to obtain lawful permanent residency through his approved family petition because the Petitioner requires a waiver for his unlawful entry that is only available if his immigration proceedings are administratively closed, which is difficult while in custody. (*Id.*) Additionally, Petitioner's continued detention has created difficulties in communicating with his attorney and preparing for his final immigration hearing. (*Id.* at 8.)

On the second *Mathews* factor, the lack of any notice, opportunity for Petitioner to challenge his detention, or individualized determination by DHS when he was detained under mandatory detention creates a very high risk of erroneous deprivation of liberty that cannot be mitigated through a post-deprivation hearing. Mr. Bonilla Chicas has freely resided in the United States for nearly thirteen years after he was released on his own recognizance in 2013 and there has never been a determination that Petitioner is a flight risk or danger to the community. Thus,

the need for an individualized determination of whether detention is warranted at the time of arrest is required to protect Petitioner's liberty interest. *See Hyppolite v. Noem*, 2025 WL 2829511, at *14 (E.D.N.Y. Oct. 6, 2025) ("[T]he record certainly establishes that there is, at the very least, a substantial likelihood that Respondents would have failed to meet their burden of proving that [Petitioner] constituted either a flight risk or a danger to the community. In other words, the risk that [Petitioner] was erroneously deprived of his liberty through Respondents' failure to provide him with a pre-detention hearing is exceedingly high."); *see also J.U. v. Maldonado,* 805 F. Supp. 3d 482, 497–98 (E.D.N.Y. 2025).

Lastly, on the third *Mathews* factor, the Government has an interest in detaining noncitizens who pose a flight risk or a danger to the community. However, Respondents have proffered no evidence showing that Petitioner is a flight risk or a danger, nor have they shown that anything has changed since Mr. Bonilla Chicas was released on his own recognizance in 2013. The Government's interest in continuing to detain Petitioner is further diminished where, as here, the Petitioner has no criminal record, has attended all of his immigration court hearings, and has significant ties to the community—factors that bear directly on flight risk and dangerousness. *See Lopez-Arevelo*, 801 F. Supp. 3d at 687; *see also Pinchi v. Noem*, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025). Moreover, affording individualized assessments of flight risk and dangerousness before redetention supports the Government's interest and does not impose a substantial fiscal or administrative burden. Although Petitioner's detention is governed by 8 U.S.C. § 1225, which does not contain a process for conducting individual assessments, the idea of individualized custody determinations are not new. *See* 8 U.S.C. § 1226(a). The procedures already available to make individualized determinations of the need for detention demonstrate that such a requirement prior to detention is not overly burdensome in Petitioner's case.

Since all three *Mathews* factors weigh in favor of Petitioner, the Court finds that the Due Process Clause of the Fifth Amendment guarantees Mr. Bonilla Chicas adequate notice of the intent to revoke his prior release, an individualized assessment of his flight risk and dangerousness, and an opportunity to respond at a hearing before his redetention by ICE. This conclusion is supported by the growing number of district courts across the country who have found that mandatory detention of noncitizens who have established a presence in the United States violates their procedural due process rights. *See, e.g.*, *Vieira*, 2025 WL 2937880, at *7; *Lopez-Arevelo*, 801 F. Supp. 3d at 687 (collecting cases). Other district courts within this jurisdiction have continued to follow this course of action following *Buenrostro-Mendez*. *See, e.g.*, *Marceau*, 2026 WL 368953, at *2; *Hassen*, 3:26-cv-00048-DB, at *4 n.1; *Clemente Ceballos v. Garite*, 3:26-cv-00312-DB, at *3 n.2 (W.D. Tex. Feb 10, 2026).

### D. Remedy

Finally, the Court turns to the appropriate remedy for the violation of Mr. Bonilla-Chicas's procedural due process rights. The Court has previously established that the appropriate remedy for a violation of a petitioner's procedural due process rights is generally immediate release. *See Cruz-Reyes v. Bondi*, 2026 WL 332315, at *7 (S.D. Tex. Feb. 3, 2026). . Petitioner has demonstrated a profound liberty interest in his freedom from civil detention and a concrete, ongoing deprivation of that liberty without any process provided by Respondents to justify his detention. Therefore, his immediate release is appropriate.

As the Court has determined, the Due Process Clause affords Petitioner procedural due process in the form of notice, an individualized assessment *before* redetention, and an opportunity to respond. Because Petitioner was entitled to notice and an individualized assessment before being redetained by ICE, a post-deprivation hearing would not remedy the core constitutional violation

that has occurred. A post-deprivation "hearing is no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Gonzalez v. Joyce*, 2025 WL 2961626, at \*5 (S.D.N.Y. Oct. 19, 2025) (citations omitted). The opportunity for this initial determination is imperative. *See Valdez v. Joyce*, 803 F. Supp. 3d 213, 219 (S.D.N.Y. 2025) (ordering immediate release based on the violation of petitioner's due process rights); *Kumar v. Wamsley*, 2026 WL 251798, at \*6 (W.D. Wash. Jan. 30, 2026) (same); *Faqeri v. Scott*, 2026 WL 194475, at \*5 (W.D. Wash. Jan. 26, 2026) (same).

The Court maintains the position that a post-deprivation bond hearing cannot cure the core violation of Mr. Bonilla Chica's due process rights that occurred when he was unlawfully redetained under a mandatory detention provision without any individualized determination of the need for detention. Ordering a post-deprivation hearing while Mr. Bonilla Chicas currently remains in custody in violation of his Fifth Amendment rights cannot make up for the lack of an initial, individualized determination process by ICE. For these reasons, the Court finds that immediate release with additional safeguards against redetention is the appropriate remedy whenever there is a violation of procedural due process rights in the context of immigration detention.[3]

## **Conclusion**

---

[3] The Court recognizes that some courts have continued to order bond hearings instead of immediate release following the Fifth Circuit's decision in *Buenrostro-Mendez*. *See, e.g.*, *Marceau*, 2026 WL 368953, at \*2.; *Hassen*, 3:26-cv-00048-DB, at \*4; *Clemente Ceballos*, 3:26-cv-00312-DB, at \*3. However, there are no procedures in place for conducting the individualized assessments afforded by the Due Process Clause in the context of Petitioner's redetention. While 8 U.S.C. § 1226 includes a process for conducting individualized custody determinations through bond hearings, Petitioner is currently detained under § 1225, not § 1226. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1. Thus, the Court finds that ordering a bond hearing under 8 U.S.C. § 1226(a) would not be an appropriate remedy.

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, (Dkt. 1), is **GRANTED**. Respondents' Response to the Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 9), is **DENIED**.

1.    Respondents are **ORDERED** to **RELEASE** Petitioner from custody immediately, under reasonable conditions of release, and to submit a status report to the Court confirming Petitioner's release within 24 hours of the date of this Order.

2.    Respondents must notify Petitioner's counsel of the exact time and location of Petitioner's release **no less than three hours** prior to Petitioner's release from custody.

3.    If Petitioner is redetained, all applicable regulations and procedures must be followed, including that Petitioner be afforded an individualized assessment of Petitioner's flight risk and dangerousness as guaranteed by the Due Process Clause of the Fifth Amendment.

4.    Within two weeks of the date of this Order, the parties shall **FILE** advisories with the Court indicating whether the parties oppose entry of a final judgment in this case.

IT IS SO ORDERED.

SIGNED this February 20, 2026.

Diana Saldaña
United States District Judge